UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kim Lundberg, | Civil No. 03-6350 (JRT/FLN) and |
| | Civil No. 05-1283 (JRT/FLN) |
| Plaintiff, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| Burlington Northern and Santa Fe Railway Co., | |
| Defendant. | |

_____

Pro Se Plaintiff.
Rodney Honkanen for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 20, 2006, on Defendant's Motion for Summary Judgment [#35] in Civil Case Number 03-6350 and Defendant's Motion to Dismiss, or, in the alternative, for Summary Judgment [#6] in Civil Case Number 05-1283. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. As discussed more fully below, Civil Case Number 03-6350 and Civil Case Number 05-1283 are intricately related, and as such both motions will be discussed in this Report and Recommendation. For the reasons which follow, this Court recommends that Defendant's Motion for Summary Judgment [#35] in Civil Case Number 03-6350 and Defendant's Motion to Dismiss, or, in the alternative, for Summary Judgment [#6] in Civil Case Number 05-1283 be granted.

## I.   BACKGROUND

Plaintiff Kim Lundberg has been employed by Defendant Burlington Northern and Santa Fe Railway Company since 1979. (Affidavit of Rodney Honkanen (hereinafter "Honkanen Aff.") Ex.

1, p. 1.)  Since 1994 Plaintiff has worked in the switchman craft during her employment with Defendant.  Plaintiff works at Defendant's Northtown facility in Minneapolis, MN.  The switchman craft is composed of five positions: switchman, switch foreman, hostler, switch tender and hump foreman.  (Affidavit of Tom Rowley (hereinafter "Rowley Aff.") ¶ 3.  The primary positions in that craft are the switchman and switch foreman positions.  (Rowley Aff. ¶ 4.)  These positions involve working in the train yard and at customer locations switching railcars.  (Rowley Aff. ¶ 4.)

**A.** **Plaintiff's 1995 FELA Lawsuit Against Defendant**

In 1995 Plaintiff filed suit against Defendant in state court for personal injuries she claimed to have sustained in a series of incidents that occurred while Plaintiff was working.  (Honkanen Aff., Ex. 2, p. 21.) (hereinafter "FELA litigation.")  The injuries Plaintiff alleged to have sustained consisted of a hernia injury and a left heel injury.  (Honkanen Aff., Ex. 2, p. 11, 17.)  Plaintiff testified at her deposition in this litigation that she injured her heel during an on-the-job injury, that she "believed it was the left [heel]," but she stated that she could not be certain.  (Honkanen Supplemental Affidavit, Ex. B, p. 55.)  Plaintiff testified in her deposition that her heel injury was not causing her any problems at that time and that the physical problem that was at issue was her hernia condition.  (Honkanen Suppl. Aff., Ex. B, p. 55.)  During the course of this litigation, after Plaintiff's deposition, Plaintiff was evaluated by Dr. James Finnell, at the request of Defendant, for an independent medical examination (IME) concerning her hernia condition.  (Honkanen Aff., Ex. 4.)  As a result of that examination, Dr. Finnell determined that Plaintiff should be restricted to the hump foreman and switch tender jobs in the switchman craft because these jobs allowed Plaintiff to work in an office environment.  (Honkanen Aff., Ex. 4.)  The hump foreman position was a craft position where Plaintiff was required to work indoors operating a computer, observing cameras

2

showing rail car movement, and electronically controlling the switching of rail cars being classified at the hump at Northtown.  (Rowley Aff. ¶ 6.)  The switch tender position electronically throws rail switches controlling the movement of the railroad traffic in the Northtown yard.  (Rowley Aff. ¶ 6.) Since the mid 1990's, Plaintiff has only worked the hump foreman and switch tender jobs in the switchman craft.  (Honkanen Aff., Ex. 2, p. 18.)  In 1996 Plaintiff and Defendant settled the FELA litigation and Plaintiff executed a release of all her claims on September 23, 1996 (Honkanen Aff., Ex. 2, p. 25-26.)

### B.      Plaintiff's 2001 Discrimination Lawsuit Against Defendant

On November 21, 2001, Plaintiff filed an action in Hennepin County, Fourth Judicial District, against Defendant seeking rescission of her 1996 FELA litigation release and also alleging claims of disability and sexual discrimination.  (Honkanen Aff., Ex. 5.)  That case was removed to the United States District Court for the District of Minnesota (hereinafter "2001 discrimination lawsuit").   In that action, Plaintiff alleged impairments involving her hernia condition and a permanent 30 pound lifting restriction. (Honkanen Aff., Ex. 6.) Plaintiff claimed these impairments limited her major life activities of household chores, sports, mowing the lawn, sexual relations, gardening and working.  (Honkanen Aff., Ex. 6.)  Plaintiff alleged discrimination regarding Defendant's rules that restricted her ability to work on what is known as the switchmans guaranteed extra board and to be paid her guaranteed wage on the switchmans guaranteed extra board. (Honkanen Aff., Ex. 6.)

Pursuant to the procedure established by the Collective Bargaining Agreement, most switchman craft positions work from the daily mark.  (Rowley Aff., ¶ 5.)  The daily mark is a procedure whereby switchmen are called by seniority and are asked to pick an open craft job for

their daily assignment. (Rowley Aff., ¶ 5.)  Employees working off the daily mark are only paid when they actually perform work for Defendant.  (Rowley Aff., ¶ 5.)

The switchmans guaranteed extra board (hereinafter "extra board") at Northtown was also established pursuant to the Collective Bargaining Agreement with the United Transportation Union. (Rowley Aff., ¶ 7.)   The extra board is a pool of switchman craft employees whose job it is to cover vacant positions in the switchman craft at Northtown resulting from illnesses and vacations of workers.  (Rowley Aff., ¶ 7.)  Employees who are on the extra board are called on a rotating basis to fill open positions, and as an incentive to be on the board, these employees are guaranteed five days of pay per week regardless of whether they actually work for Defendant.  (Rowley Aff., ¶ 7.) Since these employees are guaranteed five days of pay per week regardless of whether they work, Defendant's management carefully controls the number of employees on the board to match the anticipated vacant positions.  (Rowley Aff., ¶ 7.)

In 2000 the Terminal Superintendent of Northtown, David Hanson, disqualified Plaintiff from being on the extra board.  (Honkanen Aff., Ex. 7, ¶ 6.)  Mr. Hanson testified that, while he was Terminal Superintendent, 80% to 85% of the switchpersons craft jobs at Northtown were the entry level switchperson and switch foremen jobs.  (Honkanen Aff., Ex. 7, ¶ 2.)  Mr. Hanson testified that he discussed the extra board with Labor Relations, and it was decided that, since the primary purpose of the board was to cover vacancies in the core jobs of switchperson and switch foremen, an employee who could not perform this essential function of the extra board would not be allowed on the board.   (Honkanen Aff., Ex. 7, ¶ 5.)

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) because she was denied the right to go on the extra board and the reserve

board.[1]  (Honkanen Aff., Ex. 8, *8.)  On August 24, 2001, the EEOC determined that Defendant's refusal to allow Plaintiff to go on the extra board and the reserve board was a violation of Title I of the ADA.  (Honkanen Aff., Ex. 6.)  Plaintiff was allowed to work on the extra board from approximately August 2001 through August or September 2002, and during that time she received her guaranteed wages even when there were hump foreman or switch tender positions available for her to work.  (Honkanen Aff., Ex. 8, *8-9.)

In January 2001 Mr. Hanson was replaced by Tom Rowley.  (Honkanen Aff., Ex. 7, ¶ 1; Rowley Aff. ¶ 2.)  At some point in November 2001, Tom Rowley notified Plaintiff that her pay would be cut so that she would not be paid a guaranteed wage for any day her board position required her to fill a vacant switchperson or switch foremen position that she could not perform because of her physical restrictions.  (Rowley Aff., ¶ 11; Honkanen Aff, Ex. 8 *9.)  The pay cut became effective in February or March, 2002, but applied retroactively to November 2001. (Honkanen Aff., Ex. 8 *9.)  Plaintiff filed suit and argued that both extra board rules amounted to disability discrimination.  (Honkanen Aff. Ex. 6.)

In June 2003, United States District Court Judge Donovan Frank granted Defendant's Motion for Summary Judgment in Plaintiff's discrimination case.[2]  (Honkanen Aff., Ex. 8.)  Judge Frank found that Plaintiff's hernia condition and her 30 pound lifting restriction did not constitute a disability under the ADA. (Honkanen Aff., Ex. 8, *13.) Judge Frank further concluded that Plaintiff

---

[1] The reserve board was established by the collective bargaining agreement and occurs when furloughs of union employees reach a certain defined point, and is comprised of certain employees who can no longer hold a craft position due to their seniority.  (Honkanen Aff., Ex. 8, *6.)

[2] Lundberg v. BNSF, 2003 U.S. Dist. LEXIS 10393 (D.Minn. 2003).

failed to establish that either of her impairments substantially limited her major life activities. (Honkanen Aff., Ex. 8, *14-15.)  Plaintiff discharged her attorneys following the court's decision and moved Judge Frank to reopen her case based on allegations that Defendant withheld information from the court that would establish that Plaintiff was disabled under the meaning of the ADA. (Honkanen Aff., Ex. 9.)  Judge Frank denied Plaintiff's motion on September 5, 2003.  (Honkanen Aff., Ex. 10.)  Plaintiff filed a request for an extension of time to appeal the decision, which was also denied.  (Honkanen Aff., Ex. 11.)

### C.    Plaintiff's Current Discrimination Case Against Defendant

Plaintiff filed a new charge with the Equal Employment Opportunity Commission in March 2003.  (Honkanen Aff., Ex. 1.)  Plaintiff again complained about the extra board rules instituted by Mr. Rowley, that prohibited her from securing guaranteed pay at times when she was called to work on the extra board but was not able to perform the job required due to her disability.  (Honkanen Aff., Ex. 1.)   By that time, Mr. Ted Eason had become the Terminal Superintendent at the Northtown facility, and he continued the extra board rules that were in effect when Tom Rowley left the position.  (Eason Aff., ¶ 1-2.)

In 2003 the Northtown yard began to transition its operations to remote control switching. (Eason Aff. ¶ 3.)   Remote control switching is a technological advancement that allows the locomotive engines to be controlled by switchman craft employees working the ground carrying remote control equipment.  (Eason Aff. ¶ 3.)  Therefore, this technological advance eliminates the need for a locomotive engineer to be involved in the switching operation.  (Eason Aff. ¶ 3.)  This

transition required switchmen, switch foremen and utility switchmen[3] to train as remote control operators (RCO) and become licensed remote control operators by the Federal Railroad Administration as a part of their job requirements and duties.  ((Eason Aff. ¶ 3.)

In mid 2003 the majority of switchman craft had become RCO qualified, and at approximately the same time the Northtown yard began to fully utilize a computer operated switching system which had been installed at some earlier point in time.  (Eason Aff. ¶ 4.)  That system automatically reads the weight of rail cars being switched by gravity at the hump of Northtown, and controls the switching operations there.  (Eason Aff. ¶ 4.)  Due to the full utilization of this system, the need for human involvement by a hump foreman was eliminated, and hence the position of hump foreman was eliminated as well.  (Eason Aff. ¶ 4.)  The overseeing of the Proyard system was thereafter done by the yardmaster position, and it was unnecessary for Defendant to add any yardmaster positions to any shift in order to properly oversee the system.  (Eason Aff. ¶ 4.)

At the time that the decision was made to eliminate the hump foremen position, Terminal Superintendent Eason testified that he was unaware that Plaintiff had filed a new discrimination charge with  the EEOC.  (Eason Aff. ¶ 5.)  Mr. Eason testified that the decision to eliminate the hump foreman position was due to the fact that the position became unnecessary due to the technological and operation changes occurring at Northtown in 2003.  (Eason Aff. ¶ 5.)  Mr. Eason testified that the decision to eliminate the hump foreman position was not done in retaliation against Plaintiff for filing a charge of discrimination with the EEOC.  (Eason Aff. ¶ 5.)  Mr. Eason testified

---

[3] The position of utility switchman is an additional entry level switchman craft position which was created at approximately the same time.  (Eason Aff., n. 1.)  The position requires the employee to work on the ground, like switchman and switch foreman, doing rail car switching operations.  (Eason Aff., n. 1.)

that many other qualified hump foremen besides Plaintiff were affected by the decision to eliminate the hump foremen position, and that the vast majority of those individuals were individuals who did not have any work restrictions. (Eason Aff. ¶ 5.) In August 2003, Plaintiff amended her EEOC charge to include a claim of retaliation relating to the elimination of the hump foremen position. (Honkanen Aff., Ex. 12.)

In early 2005 Plaintiff began training as a yardmaster. (Eason Aff. ¶ 6.) The yardmaster position, a position outside the switchmans craft, is an office job which involves the planning and overseeing of switching operations. (Eason Aff. ¶ 6.) The position requires on-the-job training and at least 30 starts as a yardmaster within a year in order for a person to obtain a yardmaster seniority date, and Plaintiff is currently working toward obtaining her yardmaster seniority date. (Eason Aff. ¶ 6.)

Plaintiff filed her pro se action in Case Number 03-6350 in late November, 2003. Plaintiff testified that her Complaint asserts claims of disability discrimination under the ADA, retaliation for her filing of the 2003 EEOC charge, breach of the Collective Bargaining Agreement and fraudulent obtainment of summary judgment by Defendant in her previous discrimination case. (Honkanen Aff., Ex. 3., p. 169-70.) In this action, Plaintiff claims that her impairments are her hernia condition, a foot condition she claims related to her FELA injuries, and the restrictions listed in a Functional Capacity Evaluation (FCE) that was performed by the North Memorial Medical Center in 1994 evaluating her ability to return to work from her hernia and foot injuries.[4] (Honkanen

---

[4] In her memorandum in opposition to this motion, Plaintiff attempts to add new impairments to her claim. However, Plaintiff was asked in her deposition to state what impairments she was alleging in the current lawsuit. During her deposition Plaintiff did not assert any of the other impairments that she now asserts in her memorandum. (See Honkanen Aff., Ex. 3, p. 41-42.) Therefore, the Court will not consider any new impairments alleged by

Aff., Ex. 3, p. 41-42; Ex. 13.)  The major life activities that Plaintiff claims she is substantially limited in are walking and working.  (Honkanen Aff., Ex. 3, p. 56-57.)  Plaintiff also alleges that Defendant perceives her as being substantially limited in working. (Honkanen Aff., Ex. 3, p. 98-99.)

Plaintiff filed Case Number 05-1283 on June 13, 2005, in Hennepin County District Court, and that case was removed to this Court on June 29, 2005.  This case related to the same charge that is the subject of Plaintiff's action in Case Number 03-6350, except that Plaintiff appears to add an additional claim that the Labor Relations Board is again preventing Plaintiff from going on the reserve board.  Defendant moved for summary judgment in Case Number 03-6350, and Defendant moved to dismiss Case Number 05-1283.  In the alternative, Defendant moved for summary judgment in Case Number 05-1283.  The Court has reviewed the complaint in Case Number 05-1283 and has determined that the allegations in this action appear to be identical to the allegations in Case Number 03-6350.  Therefore, the Court will address Defendant's motion in each case as a motion for summary judgment.  For the reasons that follow, the Court recommends that Defendant's Motions for Summary Judgment in Case Number 03-6350 and Case Number 05-1283 be granted, and that both actions be dismissed with prejudice.

## II.   STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986).  Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the

---

Plaintiff and will only consider the impairments that Plaintiff alleged in her complaint and affirmed in her deposition testimony on this matter.

moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S.

at 322-23. For these purposes, a disputed fact is "material" if it must inevitably be resolved and the

resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is

such that a reasonable jury could return a verdict for the non-moving party. <u>See</u> <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in

favor of the non-moving party. <u>Id.</u> at 255. Thus, summary judgment is appropriate when the court

has viewed the facts and the inferences drawn from those facts, in the light most favorable to the

non-moving party, and found no triable issue. <u>See</u> <u>Southwall Technologies, Inc. v. Cardinal IG Co.</u>,

54 F.3d 1570, 1575 (Fed. Cir. 1995).

## III.   LEGAL ANALYSIS

### A.   Plaintiff's Claims of Disability Discrimination Are Barred by Res Judicata

The Eighth Circuit recently addressed the issue of res judicata, stating that "[t]he preclusion

principle of res judicata prevents 'the relitigation of a claim on grounds that were raised or could

have been raised in the prior suit.'" <u>Banks v. Intern. Union Elec.</u>, 390 F.3d 1049, 1052 (8th

Cir.2004) (quoting <u>Lane v. Peterson</u>, 899 F.2d 737, 741 (8th Cir.1990)). The Eighth Circuit noted

that, in order to determine whether res judicata applies in a particular case, the Court must look to

three factors: "(1) whether the prior judgment was rendered by a court of competent jurisdiction; (2)

whether the prior judgment was a final judgment on the merits; and (3) whether the same cause of

action and the same parties or their privies were involved in both cases." <u>Id</u>.

In the present case, Defendant argues that Plaintiff's disability discrimination claims are

barred by the doctrine of res judicata by the summary judgment decision rendered by Judge Frank

in Plaintiff's 2001 discrimination litigation.  Looking at the factors announced by the Eighth Circuit, the Court agrees with Defendant that Plaintiff's discrimination claims are barred by the doctrine of res judicata.

Looking at the first factor, the prior summary judgment decision rendered by Judge Frank was rendered by the United States District Court, District of Minnesota, and hence is a judgment that was rendered by a court of competent jurisdiction.  Looking at the next factor, Judge Frank's summary judgment decision was a final judgment on the merits of the case.  All of Plaintiff's claims were dismissed in that summary judgment decision, and it was a final decision on the merits. Therefore the Court must consider the final factor in the analysis; that is, whether the same cause of action and the same parties or their privies were involved in both cases.

As for the third factor, the same parties were involved in the 2001 discrimination case as are involved in the current suit.  Therefore the Court must determine whether the same cause of action is involved in both Plaintiff's 2001 discrimination case and the present case.

Looking at the 2001 discrimination case, it is clear that Plaintiff has advanced the same cause of action in the present suit as she did in her 2001 discrimination case.  With regard to the third prong of the analysis, the Eighth Circuit has noted that

> we adopted the position of the Restatement (Second) of Judgments in determining whether two causes of action are the same for res judicata purposes. Section 24 of the Restatement (Second) of Judgments provides that: 'When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar[,] ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.  What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'

Id. (quoting Restatement (Second) of Judgments § 24) (other citations and quotations omitted). Thus the Eighth Circuit concluded that "'a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim.'"Id. at 1052 (quoting Lane v. Peterson, 899 F.2d at 742). The Eighth Circuit stated that, "[i]n effect, 'res judicata bars relitigation not only of those matters that were actually litigated, but also those which could have been litigated in the earlier proceeding.'" Id. at 1053 (quoting King v. Hoover Group, Inc., 958 F.2d 219, 223 (8th Cir.1992)).

In Plaintiff's previous discrimination case, Plaintiff argued that the extra board rules constituted ongoing disability discrimination beginning in June 2000 and continuing through the time that her first lawsuit was filed. (Honkanen Aff., Ex. 5, ¶ 7.) On June 23, 2003, Judge Frank ruled that Plaintiff was not a disabled person under the ADA as a matter of law. Therefore, Plaintiff is barred from re-litigating this issue in this case by the doctrine of res judicata because Plaintiff litigated this same issue in a previous case between the same parties which was validly decided on the merits.

Plaintiff testified in her deposition that the impairments she claims in her current case include her hernia condition, a foot condition that Plaintiff sustained due to an on the job injury and in 1994 and the restrictions discussed in the Functional Capacity Evaluation ("FCE") conducted in 1994. (Honkanen Aff., Ex. 3., p. 37.)

Plaintiff asserted and litigated her claimed impairment of her hernia condition in her previous case. (See Honkanen Aff., Ex. 8, *13.) Plaintiff litigated to judgment whether she was disabled under the ADA through June 2003; therefore, Plaintiff could have litigated her claim of a foot impairment in the previous case since this claim related to her claim that she was disabled under the ADA and her foot condition existed prior to the filing of the previous discrimination case.

Therefore, Plaintiff's claims concerning her hernia condition and her foot impairment under the ADA are barred by res judicata.

Plaintiff's claim that she is limited in the major life activity of working is the same as she raised in the earlier case.  (See Honkanen Aff., Ex. 8, *13.)  In addition to claiming that she is disabled under the ADA, Plaintiff also argues that if she is not actually disabled under the ADA, that Defendant regards her as disabled.  In her deposition, counsel for Defendant asked Plaintiff "am I correct by reading the various documents you've provided me and your discovery responses that . . . [the claim that Defendant regards Plaintiff as disabled] is based on the fact that you say [Defendant] has not, since the mid '90s, let you work in any job in your craft other than switch tender and hump foreman?" to which Plaintiff responded "That's correct." (Honkanen Aff., Ex. 3, p. 98.)  Plaintiff claims that the fact that Defendant has not let Plaintiff work any other position besides switch tender or hump foreman shows that Defendant regarded her as being substantially limited in the major life activity of working.  In her previous discrimination case in front of Judge Frank, Plaintiff argued that "her hernia condition and her 30-pound lifting restriction constitute disabilities that prevent her from holding a job in her craft other than switch tender and hump foreman." (Honkanen Aff., Ex. 8, *13.)  Therefore, Plaintiff could have raised her claim that Defendant regards her as disabled in her previous lawsuit, because this claim related to her claim that she was disabled and that she was substantially limited in the major life activity of working. Plaintiff's current claim that Defendant regards her as disabled is therefore barred by res judicata, because she could have litigated that claim in her previous discrimination case before Judge Frank.

While Plaintiff did not raise the claim that she was limited in the major life activity of walking in her previous discrimination case, in her deposition Plaintiff testified that her walking

abilities at the time of her previous case were the same as they are now.  (See. Honkanen Aff., Ex. 3, p. 59.)  Plaintiff could have litigated the major life impairment of walking in her previous litigation, but she did not.[5]  Therefore, Plaintiff's claims under the ADA concerning her hernia condition, her foot condition, and her limitations in the major life activities of walking and working are barred pursuant to the doctrine of res judicata.

There is one remaining claim that Plaintiff contends constitutes an impairment that renders her disabled under the ADA.  In the present case, Plaintiff appears to contend that one of her impairments that qualifies her as disabled under the ADA is the list of restrictions discussed in a 1994 FCE which she underwent following her on-the-job hernia and foot injuries to determine her ability to return to work after those injuries.  (See Honkanen Aff., Ex. 3, p. 41-42.)  However, the 1994 FCE does not indicate an additional impairment separate from Plaintiff's hernia and foot injury.  Rather, the FCE is an evaluation as to whether Plaintiff should return to work after receiving her hernia and foot injury.  The FCE  purports to be a representation of Plaintiff's physical capabilities in 1994 and the FCE states that it was "designed to determine client's functional capabilities and physical potential for returning to work."  (Honkanen Aff., Ex. 13, p. 1.)  Furthermore, the FCE states that the "information on this form is obtained from the physician to be used . . . for the sole purpose of determining the medical qualifications of the injured worker for rehabilitation . . . This form is not designed nor intended to be used for permanent disability rating

---

[5] In her memorandum in opposition to Defendant's motion, Plaintiff contends that Defendant is withholding medical documents that prove her walking restrictions, and that Defendant and her prior attorneys failed to question her about her walking restrictions in her previous discrimination case.  However, even assuming that these allegations are true, neither of these claims are sufficient to overcome the application of the doctrine of res judicata in this case. In addition, Plaintiff has not come forward with any evidence that she was treated for her allegedly serious foot condition after receiving that injury in 1994.

purposes." (Honkanen Aff., Ex. 13, p. 4.) Plaintiff has not provided any evidence that any physician determined that the FCE restrictions were permanent restrictions. In fact, following the FCE, on August 16, 1994, Plaintiff was cleared to return to work without restrictions by Dr. Robert Hart. (Honkanen Aff., Ex. 18.) The FCE does not identify any additional impairments that Plaintiff has; rather, it is simply an assessment of Plaintiff's ability to function at work after sustaining her hernia and foot injury. As such, the FCE does not state a new impairment. Since the FCE relates to Plaintiff's foot and hernia injury, both of which are barred by res judicata, the FCE is also barred by res judicata.

### B. There Is No Genuine Issue of Material Fact Regarding Plaintiff's Charge of Retaliation Against Defendant.

Plaintiff argues that Defendant eliminated the hump foreman position at Northtown in retaliation against Plaintiff for filing a disability discrimination charge with the Equal Employment Opportunity Commission (EEOC) in March 2003. In a case such as this one, where there is no direct evidence of retaliation, the plaintiff must "first demonstrate a prima facie case: [that is, that] [s]he engaged in a protected activity, and suffered an adverse employment action, with a causal connection between the two." Wenzel v. Missoouri-American Water Co., 404 F.3d 1028, 1042 (8th Cir.2005) (citing Heisler v. Metropolitan Council, 339 F.3d 622, 632 (8th Cir.2003)). Once the plaintiff presents a prima facie case, the employer must "rebut the presumption of retaliation by advancing a legitimate, non-discriminatory reason for its action." Id. If the employer meets this burden, then the burden shifts to the plaintiff to "show that the proffered reason is an unlawful pretext." Id.

It is undisputed that Plaintiff engaged in the protected activity of filing a disability discrimination charge with the EEOC in March 2003. However, Plaintiff must prove that she

suffered an adverse employment action that was causally connected to her filing of the disability discrimination charge with the EEOC. As Plaintiff continues to this date to work for Defendant as a switch tender and now as a yardmaster, it is unclear whether Plaintiff can establish that the elimination of the hump foreman position was an adverse employment action. The Eighth Circuit has stated that "[a] materially adverse action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Id. (quoting Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir.1994)). In order to qualify as a materially adverse employment action, "[t]here must be a material change in employment status--a reduction in title, salary, or benefits." Id. Since Plaintiff continues to work for Defendant as a switch tender and now as a yardmaster, Plaintiff cannot show that she has experienced a material change in employment status as a result of filing the disability discrimination charge with the EEOC.

However, even if Plaintiff could show that she suffered an adverse employment action, Plaintiff must prove that the protected activity and the adverse employment action were causally connected, in order for Plaintiff to state a claim of retaliation against Defendant. In the present case, Plaintiff has not produced any evidence of a causal connection between the elimination of the hump foreman position and her filing of the disability discrimination charge with the EEOC. Plaintiff's sole proof is that the EEOC charge and the elimination of the hump foreman position occurred near in time to each other. However, as stated by the Eight Circuit, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.1999). Therefore, Plaintiff cannot establish a causal connection between the elimination of the hump foreman position and the filing of her charge with the EEOC, and hence she cannot establish

a prima facie case of retaliation.

In addition to her failure to prove a causal connection between the protected activity and the adverse employment action, Plaintiff has no proof of pretext.  Defendant has consistently stated that it eliminated the position of hump foreman due to technological and operational advances that rendered the position obsolete.  Defendant's elimination of the hump foreman position affected various employees in addition to Plaintiff.  Therefore, Plaintiff has not presented any proof of pretext to the Court that would establish a genuine issue of material fact as to her retaliation claim.  As such, the Court recommends that Plaintiff's retaliation claim be dismissed.

### C. Plaintiff's Claims That Defendant Breached the Collective Bargaining Agreement Are Preempted by the Railway Labor Act.

Plaintiff testified in her deposition that her amended complaint asserts a claim that Defendant allegedly breached her rights under the Collective Bargaining Agreement.  (Honkanen Aff., Ex. 3, p. 166.)  Plaintiff claims that these violations include restricting Plaintiff's seniority by removing the hump foreman job, restricting or cutting her guarantee pay of the extra board and preventing Plaintiff from going on the reserve board.  (Honkanen Aff., Ex. 3, p. 166-68.)

The Railway Labor Act ("RLA") provides that minor disputes must be resolved through the Act's mandatory arbitration process.  45 U.S.C. § 151a; Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 253 (1994).  The Supreme Court noted that "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes."  Hawaiian Airlines, Inc., 512 U.S. at 253.  The Eighth Circuit has stated that "[u]nder the RLA, parties are obligated to arbitrate minor disputes, which are controversies arising out of the application or interpretation of the collective bargaining agreement."  Gore v. Trans World Airlines, 210 F.3d 944, 949 (8th Cir.2000).  The Supreme Court has also noted that

17

minor disputes "'gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.'" Hawaiian Airlines, Inc., 512 U.S. at 252-53 (quoting 45 U.S.C. § 151a). The Supreme Court further stated that "[m]inor disputes involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" Id. at 253 (quoting Trainmen v. Chicago R. & I.R. Co., 353 U.S. 30, 33 (1957)). The Eighth Circuit noted that "[t]he RLA . . . pre-empts state law claims that involve minor disputes because such disputes are subject to mandatory arbitration." Taggart v. Trans World Airlines, Inc., 40 F.3d 269, 272 (8th Cir.1994).

In the present case, Plaintiff's alleged claims of breach of the Collective Bargaining Agreement involve minor disputes concerning the "'interpretation or application of agreements covering rates of pay, rules or working conditions.'" Hawaiian Airlines, Inc., 512 U.S. at 252-53 (quoting 45 U.S.C. § 151a). Therefore, since Plaintiff's claims alleging breach of the Collective Bargaining Agreement involve minor disputes, those claims are preempted by the RLA because these claims are subject to mandatory arbitration under the RLA.

> **D.    Plaintiff's Claim That Defendant Obtained Summary Judgment by Fraud in Her Previous Disability Discrimination Case Should be Dismissed.**

In her deposition Plaintiff testified that her amended complaint includes a claim against Defendant that Defendant engaged in fraud in order to obtain a summary judgment in Plaintiff's previous disability discrimination case in front of Judge Frank. This claim is based on Plaintiff's allegations that Defendant told Judge Frank that she had been released to full duty in 1999, that Defendant had concealed the documents pertaining to the 1994 FCE, that one of Defendant's affiants, Mr. Rowley, used the word "core" even though that word is not used in the Collective Bargaining Agreement, that Defendant conspired with Plaintiff's attorneys, and that tactical errors

were made by Plaintiff's attorneys in her previous case.  (Honkanen Aff., Ex. 3, p. 45-46; 78; 150.)

In Plaintiff's motion to re-open her 2001 disability discrimination case, Plaintiff made these same arguments to Judge Frank in support of her motion.  (See Honkanen Aff., Ex. 9.)  Judge Frank denied Plaintiff's motion and Plaintiff did not appeal that denial.  Therefore, Plaintiff's claims herein are barred by the doctrine of res judicata, because the same parties and claims are involved, and a court of competent jurisdiction has entered a final judgment on this matter.  See Banks v. Intern. Union Elec., 390 F.3d 1049, 1052 (8th Cir.2004).

In addition, Plaintiff has not come forward with any evidence to support her various claims of fraud against Defendant.  Plaintiff admitted in her deposition that she has no documents to prove that Defendant represented to Judge Frank that Plaintiff was released to full duty in 1999.  (Honkanen Aff., Ex. 3, p. 46-47.)  Plaintiff admitted at her deposition that her attorneys from her first discrimination case had a copy of the 1994 FCE and that she received a copy of the FCE from them.  (Honkanen Aff., Ex. 3, p. 80.)  In addition, the FCE is a record that was created and retained by North Memorial Medical Center, and Plaintiff has not come forward with an explanation as to how Defendant would have the power to conceal this document from Plaintiff when Defendant never had possession or control of the original document.  (See Honkanen Aff., Ex. 19.)  Likewise, Plaintiff has not come forward with any evidence that Defendant conspired with her attorneys, nor has Plaintiff explained how Mr. Rowley's use of the term "core" to refer to the entry level positions in the switchman craft which comprise the majority of the jobs in that craft is fraudulent.  Finally, Plaintiff has not come forward with any explanation as to how her disagreement with the tactical decisions of her former attorneys relates to her claim of fraud against Defendant.

Furthermore, even if Plaintiff's allegations were true, these allegations do not provide a basis

for Plaintiff's claim.  "[T]here are three ways in which one may attempt to obtain relief from a judgment: (1) on a Rule 60(b) motion for the enumerated reasons (i.e. newly discovered evidence or fraud), (2) in an independent action, or (3) upon a showing of fraud upon the court."  Carlson v. U.S. Dept. of Educ., 2003 WL 22959709, *3 (D.Minn. Dec. 12, 2003).  Since Plaintiff's Rule 60(b) motion was denied by Judge Frank, Plaintiff must establish an independent action or fraud on the Court in order to prevail on this claim.  "Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata."  United States v. Beggerly, 524 U.S. 38, 46 (1998) (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244 (1944)).  The Supreme Court noted that "an independent action should be available only to prevent a grave miscarriage of justice."  Id. at 47.  Plaintiff has not come forward with any evidence that such injustices are present in this case.

The Eighth Circuit has stated that "[t]he fraud on the court standard is distinct from the more general fraud standard of Rule 60(b)(3). . . .A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel."  Greiner v. City of Champlin, 152 F.3d 787, 789 (8th Cir.1998) (quotations and citations omitted).  Plaintiff has not provided the Court of any evidence of such a fraud; therefore, Plaintiff's claim must fail.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion For Summary Judgment [#35] in Civil Case Number 03-6350 and Defendant's Motion to Dismiss, or, in the alternative, for Summary Judgment [#6] in

Civil Case Number 05-1283 be **GRANTED**, and that Case Number 03-6350 and Case Number 05-1283 be **DISMISSED WITH PREJUDICE**.


DATED: February 15, 2006                          s/ *Franklin L. Noel*

                                                  FRANKLIN L. NOEL
                                                  United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 7, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **March 7, 2006,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.