UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KIM M. LUNDBERG,<br><br>Plaintiff,<br><br>v.<br><br>BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY,<br><br>Defendant. | Civil No. 03-6350 (JRT/FLN)<br>Civil No. 05-1283 (JRT/FLN)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

Kim M. Lundberg, 9678 181st Avenue NW, Elk River, MN 55330, *pro se* plaintiff.

Rodney A. Honkanen and Diane P. Gerth, **SPENCE RICKE SWEENEY & GERNES**, 325 Cedar Street, Suite 600, St. Paul, MN 55101, for defendant.

Plaintiff Kim M. Lundberg has brought two lawsuits against the Burlington Northern Santa Fe Railway Company ("Burlington Northern") for employment discrimination, retaliation, breach of a collective bargaining agreement, and fraud upon the court. As discussed more fully below, Civil Case No. 03-6350 and Civil Case No. 05-1283 are intricately related, so both motions are discussed together in this Order. Burlington Northern filed a motion for summary judgment in Civil Case No. 03-6350, and filed a motion to dismiss, or in the alternative, for summary judgment in Civil Case No. 05-1283. Following a hearing, United States Magistrate Judge Franklin L. Noel recommended granting both of Burlington Northern's motions. This matter is now before the Court on Lundberg's objections to the Report and Recommendation. The Court conducted a *de novo* review of Lundberg's objections pursuant to 28 U.S.C.

§ 636(b)(1)(C) and D. Minn. LR 72.2(b), and for the reasons set forth below, overrules Lundberg's objections and adopts the Report and Recommendation.

**BACKGROUND**

Lundberg has been employed by Burlington Northern since 1979 and has worked in the switchman craft since 1994. The switchman craft is composed of several positions, including switchman, switch foreman, hostler, switch tender and hump foreman. The primary positions in that craft are the switchman and switch foreman positions. These positions involve working in the train yard and at customer locations switching railcars. Lundberg works at the Northtown facility in Minneapolis, Minnesota.

In 1995, Lundberg filed a lawsuit against Burlington Northern in state court for personal injuries she claimed to have sustained in a series of incidents that occurred while Lundberg was working for Burlington Northern. Lundberg sustained a hernia injury and a left heel injury, and a doctor determined that Lundberg should be restricted to the hump foreman and switch tender jobs because these jobs allowed Lundberg to work in an office environment.[1] In 1996, Lundberg and Burlington Northern settled the personal injury lawsuit and Lundberg executed a release of all her claims.

In 2000, the Terminal Superintendent of Northtown, David Hanson, made the decision to disqualify Lundberg from being on the switchmans guaranteed extra board,

---

[1] The hump foreman position involves working indoors operating a computer, observing cameras showing rail car movement, and electronically controlling the switching of rail cars being classified at the hump at Northtown. The switch tender position involves electronically throwing rail switches controlling the movement of the railroad traffic in the Northtown yard.

which forced Lundberg to work from the daily mark.[2]  Hanson testified that, while he was Terminal Superintendent, 80% to 85% of the switchman craft jobs at Northtown were the entry level switchman and switch foreman jobs.  Hanson testified that he discussed the extra board with Labor Relations, and it was decided that, because the primary purpose of the board was to cover vacancies in the core jobs of switchman and switch foreman, an employee who could not perform this essential function of the extra board would not be allowed on the board.

Lundberg filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") because she was denied the right to go on the extra board and the reserve board.[3]  On August 24, 2001, the EEOC determined that Burlington

---

[2]  Pursuant to the procedure established by the collective bargaining agreement, most switchman craft positions work from the daily mark.  The daily mark is a procedure whereby employees are given a choice of jobs to select from each day, in order of the employees' seniority.  Because the jobs on the daily mark are doled out according to seniority, a person of low seniority could potentially be without a job if employees with higher seniority take all the jobs.  Employees working off the daily mark are only paid when they actually perform work for Burlington Northern.

The switchmans guaranteed extra board (hereinafter "extra board") at Northtown was also established pursuant to the collective bargaining agreement.  The extra board is a pool of switchman craft employees who cover vacant positions in the switchman craft at Northtown resulting from illnesses and vacations of workers.  Employees who are on the extra board are called on a rotating basis to fill open positions, and as an incentive to be on the board, these employees are guaranteed five days of pay per week regardless of whether they actually work.

[3] The reserve board, also established by the collective bargaining agreement, occurs when furloughs of union employees reach a certain defined level.  The reserve board is composed of certain employees who can no longer hold a craft position due to their seniority.  These employees are paid 75% of their wages and benefits to not work, but they must make themselves available to return to active service in their craft upon 15 days' notice.  Because the employees are placed on the reserve board according to seniority, a higher seniority employee can "bump" a more junior employee off the reserve board.  Lundberg bumped onto the reserve board in March 2000, where she remained until May 2000.  At that time, her seniority would no longer allow her

(Footnote continued on next page.)

Northern's refusal to allow Lundberg to go on the extra board and the reserve board was a violation of Title I of the ADA. Lundberg was thereafter allowed to work on the extra board.

In January 2001, Hanson was replaced by Tom Rowley. At some point in November 2001, Rowley notified Lundberg that her pay would be cut so that she would not be paid a guaranteed wage for any day her extra board position required her to fill a vacant switchman or switch foreman position that she could not perform because of her physical restrictions. The pay cut became effective in February or March 2002, but applied retroactively.

On November 21, 2001, Lundberg filed an action in Hennepin County against Burlington Northern, arguing that the extra board rules amounted to gender and disability discrimination, and seeking rescission of her 1996 litigation release. That case was removed to the United States District Court for the District of Minnesota. In June 2003, the Court granted Burlington Northern's Motion for Summary Judgment in Lundberg's discrimination case,[4] finding that Lundberg's hernia condition and her 30 pound lifting restriction did not constitute a disability under the Americans with Disabilities Act ("ADA"). The Court further concluded that Lundberg failed to establish that either of her impairments substantially limited her major life activities. Lundberg discharged her

---

(Footnote continued.)

to remain on the board, and she returned to the position of switch tender or hump foreman. Lundberg did not attempt to go on the reserve board after this time.

[4] *Lundberg v. Burlington Northern and Santa Fe Ry. Co.*, 2003 WL 21402605 (D. Minn. June 17, 2003).

attorneys following the court's decision and moved the Court to reopen her case based on allegations that Burlington Northern withheld information from the court that would establish that Lundberg was disabled under the meaning of the ADA. Lundberg's motion was denied on September 5, 2003.

Lundberg filed a new charge of discrimination with the EEOC in March 2003. Lundberg again complained about the extra board rules instituted by Rowley. By that time, Ted Eason had become the Terminal Superintendent at the Northtown facility, and he continued the extra board rules that were in effect when Rowley left the position.

Around the same time that Lundberg filed her charge with the EEOC, Burlington Northern eliminated the position of hump foreman. Burlington Northern asserted that this position was eliminated because of the development of remote control switching. The remaining duties of the hump foreman were thereafter done by the yardmaster, a position in which Lundberg has no seniority. Lundberg asserts that the elimination of hump foreman position was done in retaliation for her filing of her charge of discrimination with the EEOC. In August 2003, Lundberg amended her EEOC charge to include a claim of retaliation relating to the elimination of the hump foreman position.

Lundberg filed her *pro se* action in Civil Case No. 03-6350 in late November 2003. Although her complaint is difficult to discern, Lundberg testified that her complaint asserts claims of disability discrimination under the ADA, retaliation for her filing of the 2003 EEOC charge, breach of the collective bargaining agreement and fraudulent obtainment of summary judgment by Burlington Northern in *Lundberg v. Burlington Northern and Santa Fe Ry. Co.*, 2003 WL 21402605 (D. Minn. June 17, 2003).

Lundberg served a summons and complaint upon Burlington Northern on June 13, 2005.  Burlington Northern later filed that case in Hennepin County District Court, and removed it to this Court on June 29, 2005.  The 2005 case, Civil Case No. 05-1283, relates to the same charge that is the subject of Lundberg's action in Civil Case No. 03-6350.  The Court has determined that the allegations in Civil Case No. 05-1283 are virtually identical to the allegations for Civil Case No. 03-6350, and therefore addresses defendant's motion in each case as a motion for summary judgment.

## ANALYSIS

### I.    Standard Of Review

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of any reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### II.    Plaintiff's Objections to the Report and Recommendation

Lundberg makes numerous arguments in her objection to the Report and Recommendation.  Most of her arguments were addressed in the Magistrate Judge's well-

reasoned Report and Recommendation, but she also raises several new arguments, which are addressed below.

### A.    Commencement of Civil Case No. 05-1283

Lundberg asserts that because she never filed Civil Case No. 05-1283, the Court should not have taken jurisdiction. Lundberg admits that she served the summons and complaint on defendant, so it appears that Lundberg is confused about how a lawsuit is commenced in Minnesota. "A civil action is commenced against each defendant . . . when the summons is served upon that defendant." Minn. R. Civ. P. 3.01. Burlington Northern thereafter removed the case to federal court, and it is now properly before this Court on the basis of federal question and diversity jurisdiction.

### B.    Disability Discrimination Claim

Lundberg argues that the hump foreman and switch tender jobs were her accommodation for her disability, and that she is entitled to work full time in these positions. The Magistrate Judge concluded that Lundberg's claims of disability discrimination are barred by the doctrine of res judicata. Res judicata bars any claim "if it arises out of the same nucleus of operative facts as the prior claim." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990).

In her objection, Lundberg offers additional evidence that defendant discriminated against her when it drafted the extra board rules that cut her pay for days when her seniority would not allow her to hold positions as hump foreman or switch tender. For example, Lundberg alleges that Hanson testified that he was "proud of himself" for cutting the pay of disabled persons. Even if defendant singled her out and treated her

differently than other workers, she does not have a disability discrimination claim because the Court has already determined that she is not disabled under the ADA.[5]

Lundberg emphasizes in her objection that the Magistrate Judge erroneously stated that Burlington Northern cut her pay retroactively to November 2001. It is undisputed that Rowley notified Lundberg that her pay would be cut so that she would not be paid a guaranteed wage for any day her board position required her to fill a vacant position in the switchman craft that she could not perform because of her physical restrictions. It is also undisputed that the pay cut was applied retroactively. Lundberg argued in the 2001 litigation, as she does in the cases before this Court, that defendant's decision to change the extra board rules constituted disability discrimination. Lundberg emphasizes that the pay cut was applied retroactively to January 1, 2002, which is after she filed the 2001 lawsuit, so the fact of the pay cut could not have been in existence at the time of the earlier federal litigation. On the contrary, the Court in that case discusses the retroactive pay cut, and it is clear from the Court's decision that Lundberg's claim that the pay cuts constitute disability discrimination was considered. *See Lundberg*, 2003 WL 21402605, at *4.

Lundberg also argues in her objection that she has alleged impairments in this litigation that the Court did not consider when she was determined to not be disabled. It is difficult to discern what impairments she alleges in this complaint, and the Magistrate Judge stated that he would not consider any new impairments that she did not raise

---

[5] *Lundberg v. Burlington Northern and Santa Fe Ry. Co.*, 2003 WL 21402605 (D. Minn. June 17, 2003).

during her deposition for this litigation. In her objection, Lundberg explains that she did mention during her deposition that she had a sleep study done because of her hypertension. Lundberg has not explained when the sleep study was conducted, nor has she provided the outcome of the study. Without more, the Court cannot decipher whether this was an impairment that Lundberg could have alleged in the earlier litigation. Nevertheless, the fact that she underwent a sleep study is insufficient to show that she is disabled under the ADA.

Lundberg also argues in her objection that the Court should consider her claim that the defendant perceived her as disabled. She points to testimony of Hanson and others who stated that Lundberg had restrictions that prevented her from working on the ground. The argument that defendant perceived her as disabled could have been raised in previous litigation. Res judicata bars re-litigation not only of those matters that were actually litigated, but also those which could have been litigated in the earlier proceeding. *Banks v. Int'l Union Elec., Elec., Tech., Salaried & Mach. Workers*, 390 F.3d 1049, 1053 (8th Cir. 2004).

Finally, Lundberg argues that her claims of discrimination are "sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata." Lundberg had a fair and full opportunity to litigate her claim of disability discrimination in 2001. Adherence to the doctrine of res judicata saves judicial energy, prevents harassment of the defendant, and promotes expeditious resolution of controversies. The Court sees no reason to depart from it.

C.  **Retaliation Claim**

Lundberg argues that Burlington Northern eliminated the hump foreman position in retaliation for her filing a disability discrimination charge with the EEOC. To demonstrate a prima facie case of retaliation, plaintiff must show she engaged in a protected activity, she suffered an adverse employment action, and that there is a causal connection between the two actions. *Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1042 (8th Cir. 2005).

Lundberg clearly engaged in protected activity, but the Magistrate Judge expressed doubt as to whether Lundberg could prove an adverse employment action because Lundberg continues to work as a switch tender and yardmaster. In her objection, Lundberg provides some evidence that the elimination of the hump foreman position reduced her salary. A reduction in salary is a material change in employment status, which is sufficient to show an adverse employment action. *Id.*

Assuming that Lundberg has proven an adverse action, Lundberg's retaliation claim still fails because she has not shown a causal connection between the elimination of the hump foreman position and her filing of the disability discrimination charge with the EEOC. Lundberg's only evidence of a causal connection is the fact that Burlington Northern eliminated the position during the same month that she filed her charge. The Eighth Circuit generally requires more than a temporal connection to present a genuine factual issue on retaliation. *See Nelson v. J. C. Penney Co.*, 75 F.3d 343, 346 (8th Cir. 1996). Here, there is no evidence that defendant even knew that she filed the EEOC charge when it eliminated the hump foreman position.

Burlington Northern explains that the hump foreman position was eliminated because of technological advances. In her objection, Lundberg argues that there were no computer changes that would justify elimination of the hump foreman position, and that the job of the hump foreman is now being done by the yardmaster. In essence, Lundberg is trying to demonstrate that defendant's legitimate, non-discriminatory reason for eliminating the hump foreman position is a pretext for discrimination. However, even a persuasive argument about pretext cannot overcome the fact that Lundberg has failed to put forth a prima facie case of retaliation.

### D.     Fraud On The Court

Lundberg asserts that Burlington Northern engaged in fraud to obtain summary judgment in the earlier federal disability discrimination case. "A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel." *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998). The Magistrate Judge concluded that Lundberg failed to present any evidence of such misconduct.

In her objection, Lundberg asserts that she can show that counsel fabricated evidence. She asserts that the Court should never have ruled on the disability discrimination claim because her lawyer filed the case after the statute of limitations had expired, and defendant never told the Court this fact. Failing to raise a statute of limitations issue is not fabrication of evidence and cannot support a claim of fraud on the court.

Lundberg raises several additional issues relating to the conduct of her lawyers. She asserts that her attorney conspired with defendant to get summary judgment granted against her so that she could not show damages in an attorney malpractice claim caused by her attorney's violation of the statute of limitations. She also alleges that her attorney failed to make several claims on her behalf, and gave up other claims in the 1996 settlement without her permission to do so. Even if her allegations are true, they have no bearing on the claims before this Court.

### E. Settlement of Her Personal Injury Lawsuit In 1996

Lundberg asserts that her 1996 settlement with Burlington Northern provided that she could keep her job working full-time as a hump foreman and switch tender, and she would continue to be paid even when her seniority would not allow her to hold these positions. The Court addressed this issue specifically, and concluded that neither the railroad representatives who negotiated the release nor her attorney made any sort of agreement at the time of the settlement as to Burlington Northern's ability to accommodate her position of hump foreman or switch tender. *Lundberg*, 2003 WL 21402605, at *6. Therefore, the doctrine of res judicata also precludes consideration of this issue.

### F. Gender Discrimination

Finally, Lundberg appears to be raising a claim of gender discrimination in her objection. Specifically, she asserts that defendant discriminated against her by preventing her from training as a yardmaster for many years. The gender discrimination

claim does not appear in her complaint and is not properly before this Court. Moreover, it appears that the statute of limitations has long since expired on this claim.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** Lundberg's objections [Civil Case No. 03-6350, Docket No. 74 and Civil Case No. 05-1283, Docket No. 23] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Civil Case No. 03-6350, Docket No. 73 and Civil Case No. 05-1283, Docket No. 22]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Burlington Northern's Motion for Summary Judgment [Civil Case No. 03-6350, Docket No. 35] is **GRANTED**.

2. Burlington Northern's Motion to Dismiss, or, in the alternative, for Summary Judgment [Civil Case No. 05-1283, Docket No. 6] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 24, 2006  
at Minneapolis, Minnesota.

        s/ John R. Tunheim  
        JOHN R. TUNHEIM  
        United States District Judge